UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TODD A. CRISWELL, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV01565 ERW |
| ) | |
| CITY OF O'FALLON, MISSOURI, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #46].

**I. BACKGROUND FACTS**[1]

Plaintiffs Todd Criswell and Charles Mobley are both former employees of Defendant City of O'Fallon, Missouri ("the City"), who were terminated on May 16, 2006. Plaintiff Criswell was employed as the Director of Community Development for the City, and reported directly to the City Administrator, Defendant Robert Lowery, Jr. Plaintiff Mobley was employed as the Director of Public Works for the City; Defendant Mobley originally reported directly to Defendant Lowery, but prior to his termination, the reporting structure was reorganized and he reported to Plaintiff Criswell until his termination. Defendant Lowery was employed as City Administrator beginning in October, 2005. Defendant Greg Smothers served as the assistant City Administrator for the City of O'Fallon.

---

[1]This statement of facts is taken from Plaintiffs and Defendants respective submissions. The Court notes where the Parties disagree regarding the facts.

1

There are a number of ongoing issues in the City's administration prior to Plaintiffs' terminations, which form the basis for Plaintiffs' claims. The first, was an investigation which involved two former City employees, and improper kickbacks from real estate developers. Plaintiffs' were asked by the City Mayor, Donna Morrow, in July, 2005, to assist Detective David Beuhrle with an investigation into the possibility of corruption involving employees of the City. Late in 2005, Detective Beuhrle contacted the Federal Bureau of Investigation ("FBI") regarding the allegations of kickbacks between city employees and real estate developers. The FBI was specifically investigating two employees within the community development department, Art Genasci and Chuck Bales. Plaintiffs met with the FBI in January, 2006. It is undisputed that at the January, 2006 meeting, Plaintiffs did not discuss any impropriety involving Defendants Lowery or Smothers, rather their discussions were limited to those actions by Art Genasci and Chuck Bales. Furthermore, it is evident that Defendants Lowery and Smothers was aware of this meeting and the purpose for it.

Plaintiffs' testified that they met a second time with the FBI in the Spring of 2006; at which time they discussed their disputes with Defendants Lowery and Smothers regarding the disbursement of escrow funds. Plaintiffs stated generally that at this meeting they discussed the Defendants conduct regarding the disbursement of escrow funds as it related to specific development projects. During a staff meeting on March 30, 2006, where both Defendants Lowery and Smothers were in attendance, Plaintiff Mobley stated that he would not discuss the issue of escrows in further detail, due to an ongoing investigation. Neither Plaintiff Mobley nor Plaintiff Criswell told Defendants Lowery or Smothers that they were the subject of the investigation, the specific contents of any discussions with the FBI, or that the FBI was

specifically mentioned. However, Defendants Lowery and Smothers were generally aware of an investigation.

Throughout the end of 2005 and the beginning of 2006, until Plaintiffs' terminations, there was an ongoing dispute between Plaintiffs and Defendants Lowery and Smothers regarding the release of escrow funds to developers. City code requires that a developer enter into an agreement with the City, prior to beginning construction, where the developer pays the City a certain amount of money in escrow, to be released to the developer upon completion of the project in accordance with the City code. The process requires the inspection of a project by a City inspector, who then lists any deficiencies. If those deficiencies are completed within sixty days, no further inspection is required,[2] and the escrow money is to be returned. If the deficiencies are corrected within sixty to ninety days, then the escrow money will also be released, but a small deduction is taken. Additionally, major deficiencies may be cited during this sixty to ninety day time period, and the developer may be required to complete these additional deficiencies before the escrow money is released. If the deficiencies are not corrected within ninety days, the City may reinspect the development. The City ordinances further provide for the compounding of interest, as well as potential liability for attorney's fees, in the event the escrow money is not released upon successful completion of the project.

According to the deposition testimony of both Plaintiffs and Defendants Lowery and Smothers, there was a build-up of escrow money on the City's books, that needed to be returned

---

[2]There is some dispute between the Parties as to whether the ordinance permits the City to require correction of major deficiencies, if all listed deficiencies are corrected within the sixty day period. Plaintiffs interpreted the City ordinances to permit such additional requirements, while Defendants Lowery and Smothers viewed the ordinance as forbidding any additional requirements, if all listed deficiencies were corrected within the sixty-day time period. This formed the basis for much of the conflict between the Parties during Plaintiffs' tenure with the City.

to developers. Additionally, there was a back-log of inspections that needed to be completed, following the correction of noted deficiencies by the developer. While the Parties agreed that there was an excess of escrow money that needed to be reviewed, the Parties disagreed over how to remedy this problem. The disagreement seemed to escalate until Plaintiffs termination in May, 2006. One source of disagreement between the Parties on this issue, was continued conversations between Plaintiffs and Board of Aldermen Busken, Schipper, and Hennessey throughout the end of 2005 until their termination in May, 2006. Plaintiffs approached members of the Board of Alderman[3] to discuss on going projects within the Community Development Department. Plaintiffs did not routinely inform Defendants Lowery or Smothers of these meetings. Defendants Lowery had specifically stated that Plaintiffs were not to speak with members of the Board of Alderman, without first requesting permission from Defendant Lowery, who was going to create a form for this purpose.[4] Plaintiffs were permitted to answer questions from the Board of Alderman when asked. The Parties discuss two specific projects in some detail, which formed the basis for some of the ongoing disagreement between the Parties regarding escrow funds. However, the Court does not believe it is necessary to recite the details of those projects here, as the specific details of the disagreement are not relevant to the Court's decision.

## II. PROCEDURAL HISTORY

Plaintiff Criswell filed suit against Defendants City of O'Fallon, Missouri ("the City"), Donna Morrow, Robert Lowery, Jr., Greg Smothers, Daniel Christoff, Pierce Conley, Rick Lucas, Peter Cantwell, John Haman, Bill Hennessy, and Jeff Schwentker, alleging two counts arising out

---

[3] The Board of Aldermen is now the City Council, however, the Court will refer to the members of the board as Alderman.

[4] It is unclear from the testimony and evidence submitted whether such a form was created.

of Plaintiff Criswell's termination from his employment with the City. Under Count I, Plaintiff Criswell alleged that Defendants violated his rights under the First Amendment of the Constitution and that Defendants are therefore liable under 42 U.S.C. §§ 1983 and 1985. Under Count II, Plaintiff Criswell alleged wrongful discharge under Missouri Public Policy law. Plaintiff Criswell's allegations arise out of Defendants' alleged retaliation against him for exercising his right to free speech. Defendants filed a Motion to Dismiss, which this Court granted in part and denied in part. The only claims remaining, following this Court's order are against the City and Defendants Lowery and Smothers under Count I, for violation of 42 U.S.C. § 1983, and under Count II against the City; all other Defendants under Count II were dismissed.

A similar case was filed by Plaintiff Charles E. Mobley against the same Defendants, raising the same claims. A similar motion to dismiss was filed by Defendants in the Mobley case, and Judge Hamilton ruled in the same manner as this Court, leaving the same claims pending against the same Defendants. The two cases initially proceeded separately, however much of the discovery in the two cases was consolidated by agreement of the Parties. On February 6, 2008, the Parties filed a joint motion to consolidate the two pending cases for trial, and that motion was granted, with the cases consolidated on February 8, 2008.

The case is set for trial on a three week docket starting on July 7, 2008. On April 11, 2008 Defendants filed a motion for summary judgment, which is now fully briefed and will be addressed by the Court at this time.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293

F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

Plaintiffs allege two distinct claims, the first is a retaliation claim under 42 U.S.C. § 1983, and the second is a claim for wrongful discharge under Missouri common law. While the two claims are based on the same factual circumstances, the legal analysis is distinct, and therefore the Court will address each claim in isolation. Plaintiffs base both claims on two distinct events. The first basis is that Plaintiffs were terminated because they exercised their right to free speech by blowing the whistle on Defendant Lowery by advising members of the City's Board of Alderman that Lowery was engaging in activities which appeared to be inappropriate, either unethical or illegal.[5] The second basis is that Plaintiffs were terminated because they were cooperating with the FBI, who were assisting Detective Beuhrle in his investigation regarding bribes and kickbacks between employees of the City of O'Fallon and real estate developers. The Court will address each claim based on each event. In those instances where the discussion overlaps, the Court will reference the relevant analysis, to avoid repetition.

### A. RETALIATION

---

[5]In Plaintiffs' response brief they do not specifically reference Defendant Smothers, however, the same allegations were made under Count I against Defendant Smothers as against Defendant Lowery.

This claim remains pending against Defendants Lowery and Smothers, as well as against the Defendant City. Defendants argue first that the City is entitled to Summary Judgment on this count as Plaintiffs' have failed to present evidence of a custom or policy sufficient to support a claim under § 1983 against a municipal defendant. Additionally, Defendants Lowery and Smothers argue that they are entitled to summary judgment on Count I because Plaintiffs' have failed to show that the speech in which they engaged was protected by the First Amendment, and in the alternative, that Plaintiffs have not presented evidence to satisfy the prima facie case of retaliation under the First Amendment due to a lack of causation.

The Court will first address the Defendant City's argument that Plaintiffs' have failed to present evidence of a that a City policy caused the alleged discrimination. A City may only be held liable for the actions of an employee, "if one of its customs or policies caused the violation" of the Plaintiffs' First Amendment rights. *Davison v. City of Minneapolis, Minnisota*, 490 F.3d 648, 659 (8th Cir. 2007); *see also Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-91 (1978). This requires little analysis, because, even assuming that Defendants Lowery and Smothers violated Plaintiffs' First Amendment rights, Plaintiffs have failed to present any evidence that these actions were pursuant to a custom or policy. Therefore, the Defendant City is entitled to summary judgment on Count I of Plaintiffs' complaint.

The Supreme Court has clearly recognized "that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The Eighth Circuit, in a recent decision, reiterated the *Mt. Healthy* test that to establish a prima facie case of retaliation, "a plaintiff must allege and prove that: (1) she engaged in activity protected by the first

8

amendment; (2) the defendant took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." *Davison*, 490 F.3d at 654-655 (citing *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287 (1997)). If the employee meets this burden, "the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity." *Davison*, 490 F.3d at 655.

As an initial matter, the Court must determine whether, as public employees, the Plaintiffs were engaged in constitutionally protected speech. *Garcetti*, 547 U.S. at 418. There are "two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires a determination of whether the employee spoke as a citizen on a matter of public concern." *Id*. If the answer to this question is yes, "then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*

The Court first addresses Plaintiffs' claim that they were terminated in retaliation for their conversations with the City's Board of Alderman, specifically the Board's president, Mr. Schipper, regarding instructions to return escrow funds to developers in a manner that Plaintiffs' believed was contrary to the City's ordinances. The Court agrees with the Defendants that Plaintiffs' conversations with Board Members regarding Defendants Lowery and Smothers' directions regarding escrow funds, was not protected speech. In the case of *McGee v. Public Water Supply, District #2 of Jefferson County, Missouri, et al.*, the Eighth Circuit held that conversations between the plaintiff, District Manager, and members of the Board of Alderman regarding two District water projects in which he disagreed with their decisions was not protected

9

speech. 471 F.3d 918, 919-920 (8th Cir. 2006). The Board of Alderman subsequently eliminated the plaintiff's position. *Id.* at 919. The Eighth Circuit articulated the struggle which is highlighted in the present case, when the employee "speaks upon a matter of public concern" but "does so in the course of his ordinary duties as a government employee." *Id.* at 920 (citing *Garcetti*, 547 U.S. at 446 (Breyer, J., dissenting)). The Eighth Circuit concluded that the plaintiff's "First Amendment retaliation claims are premised on statements that were not protected speech." *McGee*, 471 F.3d at 921.

The Court finds this case to be directly analogous to *McGee*. The Plaintiffs' had numerous discussions with both Defendants Lowery and Smothers, as well as members of the Board of Alderman, regarding the propriety of releasing escrow funds before all deficiencies on the project had been completed, so long as the list of original deficiencies had been completed within the sixty days. While the Court recognizes that the public may have an interest in the repair of deficiencies by developers, these matters were clearly part of Plaintiffs Mobley and Criswell's jobs as City employees. Both Plaintiffs' testified in their depositions that they were responsible for the escrow funds, and that while they agreed with the Defendants that there was too much money being held in escrow, they disagreed with how to rectify this problem. If Plaintiffs were terminated in retaliation for their disagreements over the handling of the City's excess escrow funds, this does not form the basis of a First Amendment claim, as they were not acting as a citizen, but rather as an employee. *See McGee*, 471 F.3d at 921 ("This was an exercise of the Board's managerial discretion that *Garcetti* expressly leaves to public employers, not to federal courts applying the First Amendment."). It is undisputed that the disagreement between Plaintiffs and Defendants Lowery and Mobley over interpretation of the meaning of the

language in a city code provision as to the legitimacy of re-inspections, was never resolved by any party or institution with authority.

The Court next addresses Plaintiffs' second argument that they were terminated in retaliation for their discussions with Detective Beuhrle and the FBI. This requires the Court to look at two separate instances. Plaintiffs were asked by Mayor Marrow to assist Detective Beuhrle in investigating corruption in the City, specifically related to kickbacks by real estate developers to City employees. Plaintiffs, reluctantly, assisted Detective Beuhrle in his investigation. Defendants Lowery and Smothers were aware of Plaintiffs' assistance with Detective Beuhrle's investigation, as they were involved in some of the conversations that took place with Detective Beuhrle and Plaintiffs. It is further undisputed that Defendants Lowery and Smothers were aware that Detective Beuhrle contacted the FBI, and that Plaintiffs' continued their cooperation once the FBI became involved. Detective Beuhrle's investigation involved as subjects only Mr. Bales and Mr. Genasci, and that investigation ended in January, 2006. The Court finds that Plaintiffs' involvement in the investigation regarding other City employees and their alleged misconduct, was part of Plaintiffs' responsibilities as City employees. They were asked to participate in the investigation by the Mayor of the City, involving inspectors in the community development department. These were areas that were within the scope of the Plaintiffs' job duties. Plaintiffs cite to the case of *Livingston v. Wacker*, for support of their position that Plaintiffs' cooperation with Detective Beuhrle and the FBI was outside there job responsibilities. *Livingston v. Wacker*, 2008 WL 185796 (E.D. Mo. Jan. 18, 2008) However, the court in *Livingston*, held that while two of the plaintiffs, Livingston and O'Connor, could maintain an action for retaliation on the basis of their discussions with the FBI, the remainder of the plaintiffs could not. *Livingston*, 2008 WL 185796, *7. The court distinguished between the two

sets of Plaintiffs on the basis that the plaintiffs Livingston and O'Conner went to the FBI in violation of internal policy, and without the permission of their supervisors whereas the remaining plaintiffs discussed the issues with the FBI pursuant to a memorandum issued by their supervisor requiring them to cooperate with the ongoing FBI investigation. *Id.* at 7-8. In the present case it is undisputed that Plaintiffs Criswell and Mobley were instructed by Mayor Morrow to cooperate with Detective Beuhrle in his investigation, and subsequently to assist the FBI with its investigation. The Court finds that the facts more closely represent those of the second group of plaintiffs in *Livingston*, and therefore Plaintiffs were not acting as public citizens speaking on a matter of public concern. *Id.*

The second conversation with the FBI, which took place in April of 2006, is more closely analogous to the first set of plaintiffs in *Livingston*, 2008 WL 185796, *7. When Plaintiffs Criswell and Mobley went to the FBI a second time in order to discuss the actions of Defendant Lowery, and Defendant Smothers, Plaintiffs were not acting in response to a request by the City Mayor. Not only were Plaintiffs actions done without the instruction of there supervisor or the City government, Plaintiffs specifically refused to discuss the ongoing investigation with Defendants Lowery or Smothers. The Court concludes that Plaintiffs have presented evidence that the second meeting with the FBI constituted protected speech under the First Amendment. Having satisfied the burden on the first element of a prima facie case for retaliation, the Court will address the remaining two elements.

The second requirement is that Plaintiffs suffered an adverse employment action. *Davison*, 490 F.3d at 654-655. It is undisputed that Plaintiffs were terminated, thus satisfying the second requirement. The third requirement is that the protected activity was a substantial or motivating factor in Defendants' decision. *Id.* For a number of reasons, Plaintiffs have failed to

present evidence sufficient to support a showing on this third element. First, the evidence is insufficient to show that Defendants Lowery and Smothers knew of Plaintiffs' discussion with the FBI in April, 2006. Plaintiff Criswell testified in his deposition that he did not believe Defendant Lowery was aware of the second meeting with the FBI. During a March 30, 2006 staff meeting, Defendant Lowery became upset when Plaintiff Mobley refused to answer a question, stating that he could not answer it because of an ongoing investigation. However, no further details of the investigation were discussed. Furthermore, both Plaintiffs Mobley and Criswell testified that they did not inform Defendant Lowery of any investigation. Therefore, the Court concludes, that without knowledge of the protected speech, this could not have formed the basis for Defendants decision to terminate Plaintiffs.

Secondly, the Court holds that Defendants have presented a legitimate, nondiscriminatory reason for Plaintiffs' terminations, which Plaintiffs have failed to combat with evidence of pretext. *Davison*, 490 F.3d at 655. Plaintiffs were each provided with a termination letter which listed in detail the reasons for Plaintiffs' terminations. Furthermore, Defendants have presented the Court with a copy of a memorandum that was sent to Plaintiff Criswell on April 7, 2006, which listed Defendant Lowery's expectations, and the Plaintiffs failure to meet those expectations. There were two major disputes between the Plaintiffs and Defendants Lowery and Smothers; the reorganization of the Community Development department, and the release of back-logged escrow funds. As the evidence presented by the Plaintiffs details, there was ongoing disagreement between the Parties regarding these issues, and there was clearly an acrimonious relationship. However, this provides the Defendants with a valid reason for Plaintiffs' terminations. The Court recognizes the evidence presented by the Plaintiffs, that Defendant Lowery did not get along with Plaintiff Criswell-a recorded conversation referenced a statement by Defendant Lowery that he

13

would like to murder Plaintiff Criswell. However, these disagreements do not show a violation of the First Amendment.

Furthermore, the Court holds that Plaintiffs' have failed to show that these reasons provided as the basis for Plaintiffs' terminations were pretextual. *Davison*, 490 F.3d at 655. Where there is no direct evidence of retaliation, the Court must consider whether there is sufficient circumstantial evidence to support a jury finding in favor of Plaintiffs. *Day v. Johnson*, 119 F.3d 650, 654 (8th Cir. 1997). While the Plaintiffs are "entitled to reasonable inferences from the evidence . . . inferences must be more than speculation or conjecture to be reasonable." *Id.* Plaintiffs cite to the case of *Barnard v. Jackson County, Missouri*, to support their assertion that the temporal proximity between Plaintiffs' conversation with the FBI and their termination is sufficient to defeat Defendants' motion for summary judgment. 43 F.3d 1218 (8th Cir. 1995). In *Barnard*, the Eighth Circuit held that the legislators decision to terminate the plaintiff could have been related to the plaintiff's continued meetings with the FBI, and therefore summary judgment was inappropriate. *Id.* at 1225. Plaintiffs rely on *Barnard* for the proposition that a four month lapse between the date the employer became aware of Barnard's conversations with the FBI and his termination was sufficient proximity to support the conclusion that he was terminated because of his FBI conversations. *Id.* at 1226-1227. However, the Court notes that the Eighth Circuit further emphasized the extensive questioning that took place by Barnard's employer, the state legislature, regarding his conversations with the FBI and their obvious displeasure regarding these conversations. *Id.* The Eighth Circuit held that plaintiff Barnard had presented sufficient evidence to support an inference of retaliation, specifically noting that in order for Barnard to be terminated, a vote of six legislators was required, and that of the seven votes cast in support of Barnard's termination, three came from the most vocal critics of Barnard's conversations with the

14

FBI. *Id.* Clearly, there was more evidence than simply a proximity in time between the conversations with the FBI and Barnard's termination. The Eighth Circuit emphasized that a reasonable inference must be more than just speculation. *Day*, 119 F.3d at 654. In the present case, the only support for Plaintiffs' assertion, that they were terminated as a result of their protected speech, is temporal proximity. There is plenty of evidence presented regarding the disagreement between the Parties over the interpretation and implementation of the escrow ordinances. However, the Court has already concluded that these conversations were part of Plaintiffs' job description and were not protected under the First Amendment. The Court concludes that Plaintiffs have failed to provide evidence that could support a jury finding in their favor that the April, 2006 conversation with the FBI was a substantial or motivating factor in their termination, and that Defendants' proffered reason for Plaintiffs' termination was pretextual.[6]

Plaintiffs have failed to present evidence to support a prima facie case of retaliation for Plaintiffs' exercise of their First Amendment rights under 42 U.S.C. § 1983. Furthermore, even if a connection between the protected speech and Plaintiffs' termination could be shown, Plaintiffs' have failed to present any evidence showing that Defendants' proferred reasons for Plaintiffs' terminations were pretextual.

### B. MISSOURI COMMON LAW

Plaintiffs allege under Count II, on the claim against the city, that they were terminated in violation of Missouri public policy. Specifically, Plaintiffs argue that they were terminated when

---

[6]Plaintiffs emphasize the positive work history that they had prior to Defendant Lowery's employment as the City Administrator in October of 2005. Defendants do not dispute that Plaintiffs had a good work history, however, Defendants argue that this is irrelevant to Plaintiffs' claim; the Court agrees. Following Defendant Lowery's employment as City Administrator, Plaintiffs working relationship with that position clearly changed. Such a conflict between employees is a valid basis for termination. A good work history up to that point does not create an inference of retaliation.

15

they blew the whistle on misconduct by Defendants Smothers and Lowery, by reporting violations of the escrow statutes to the Board of Alderman. Additionally, Plaintiffs' argue that they were retaliated against for reporting impropriety to the FBI, at both the January, 2006 meeting, and the later April, 2006 meeting. Defendants dispute that Plaintiffs' can succeed on a wrongful discharge claim, as they have failed to allege any illegal act they were asked to perform, nor can they show that they were discharged because they reported violations of law or public policy to their superiors or to public authorities. The Court will address both bases raised by Plaintiffs.

Generally, "an employer can discharge-for cause or without cause-an at-will employee . . . and still not be subject to liability for wrongful discharge." *Lynch v. Blanke Baer & Bowey Krimko, Inc.*, 901 S.W.2d 147, 150 (Mo. Ct. App. 1995) (internal citation omitted) (alterations in original). "However, a narrow, public policy exception has been carved out for wrongful discharge for an at-will employee when an employer's act of discharging the employee is violative of a statute, regulation based on a statute, or a constitutional provision." *Id.* There are four categories of cases that fall within the public policy exception:

> (1) discharge of an employee because of his or her refusal to perform an illegal act; (2) discharge because an employee reported violations of law or public policy to superiors or public authorities; (3) discharge because an employee participated in acts that public policy would encourage . . .; and (4) discharge because an employee filed a worker's compensation claim.

*Id.* (citing *Boyle v. Vista Eyeware, Inc.*, 700 S.W.2d 859, 873-875 (Mo. Ct. App. 1985)). Plaintiffs' claim is based upon the second exception[7] to the at-will employment doctrine. To

---

[7]In their opening brief, Defendants argue that Plaintiffs' claim under Count II attempts to state a cause of action under the first exception to the at-will doctrine, however, Plaintiffs make clear in their response brief that they are alleging a cause of action under the second exception to the doctrine. Based on these statements in Plaintiffs' response brief, the Court will analyze the issue under the second exception. However, the Court notes that it is unlikely that Plaintiffs' could succeed under the first exception, as they have failed to cite to any statute or law that they were instructed to violate. *Lynch*, 901 S.W.2d at 150. The disagreement over the interpretation

succeed on this claim, Plaintiffs must prove that: "(1) [they] reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of well-established and clearly mandated public policy; (2) [Defendants] discharged [them]; and (3) there was an exclusive causal connection between [their] discharge and reporting violations to either [their] superiors or to public authorities." *Bell v. Dynamite Foods*, 969 S.W.2d 847, 852 (Mo. Ct. App. 1998); *see also Livingston*, 2008 WL 185796, at *10.

The first requirement is that Plaintiffs "reported to superiors or to public authorities serious misconduct that constitutes a violation of the law *and* of clearly mandated public policy." *Bell*, 969 S.W.2d at 852 (emphasis added). "'The law' refers specifically to a constitutional provision, a statute, or a regulation based on a statute." *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 336 (Mo. Ct. App. 1995). This requirement is only met with regards to Plaintiffs' first conversation with Detective Beuhrle and the FBI regarding community development department employees Art Genasci and Chuck Bales, and their involvement in receiving kickbacks from real estate developers. Plaintiffs were reporting incidents that were a violation of the law, and therefore protected activity under the Missouri public policy exception. The conversations with Board of Aldermen, and the second conversation with the FBI, addressed Defendants Lowery and Smothers views on the escrow accounts, which was not a violation of the law, but rather a disagreement over the interpretation of City ordinances. Only the discussion of kickbacks discussed illegal conduct, and therefore the Court will address the remaining requirements for wrongful discharge based only on the first conversation with the FBI, as it is the only conversation that satisfies the first element of a cause of action under Missouri common law.

---

of the City ordinances regarding escrow funds, does not satisfy this requirement.

However, as the Court concluded above, there is no evidence to support the third element required for a showing of wrongful discharge, namely a causal connection. When Defendant Lowery was first employed by the City, he participated in the investigation into impropriety regarding kickbacks. There is no evidence that Plaintiffs' involvement in blowing the whistle on Art Genasci and Chuck Bales had any relation to their termination. Plaintiffs' testimony supports the conclusion that Defendants Lowery and Smothers were aware of Plaintiffs' involvement in the ongoing investigation of Mr. Genasci and Mr. Bales, but there is no testimony, or other evidence, to support the conclusion that these actions formed the basis of Plaintiffs' terminations. The only evidence presented by Plaintiffs, is in reference to the reasons asserted by Defendants for their termination of Plaintiffs. Plaintiffs rely upon discrepancies in Defendants Lowery and Smothers' testimony as evidence that the real reason for their termination was retaliatory. However, the Court has reviewed the evidence, and while the testimony of Defendants Lowery and Smothers is not totally in accord, it is clear that the Plaintiffs were terminated because of their ongoing disagreement with Defendant Lowery regarding the escrow accounts.[8] Additionally, there had been ongoing concern that Plaintiff Mobley's position was unnecessary, as he only had one direct report. The Court does not find this alleged discrepancy to be sufficient to support an argument that these reasons were pretextual. The Court concludes that the Defendant City is entitled to summary judgment on Count II of Plaintiffs' complaint.

## V. CONCLUSION

---

[8]The Court notes that an additional reason cited for Plaintiff Mobley's termination was that his position was unnecessary due to the lack of direct reports. Throughout 2006, Defendant Lowery had expressed a desire to reorganize Plaintiff Mobley's department in order to increase the number of direct reports, in order to justify his position. However, Plaintiffs' resisted reorganization. Therefore, Defendant Lowery cited the lack of Plaintiff Mobley's direct reports as an additional reason for his termination.

The Court concludes that Plaintiffs have failed to present evidence which creates a genuine issue of material fact on either count of their complaint. Under Count I, Plaintiffs' allegation of retaliation in violation of their First Amendment rights, concern only those conversations with the FBI that occurred in April, 2006. These can be considered under the First Amendment as protected speech, due to Plaintiffs' conduct as private citizens acting on a matter of public concern. However, Plaintiffs' have not presented evidence which could support a jury's finding that their termination was in response to these conversations. In fact, Plaintiffs have not provided evidence that Defendants Lowery and Smothers were even aware of this second meeting with the FBI, and if they were aware of it, they were not aware of its content. Therefore, Defendants motion for summary judgment as to Count I is granted.

The Court further concludes that Plaintiffs' have failed to present evidence of a genuine issue of material fact as to Count II. In order to state a cause of action for wrongful discharge in violation of Missouri public policy, Plaintiffs must be able to present evidence that they reported to their superiors or public authorities serious misconduct that constitutes a violation of the law and a violation of well-established and clearly mandated public policy. Plaintiffs' failed to present any evidence that they reported violations of the law with regards to Lowery and Smothers. The Court does find that Plaintiffs aided in an investigation of former employees Art Genasci and Chuck Bales, however Plaintiffs' have not presented any evidence of an exclusive causal connection between their cooperation with the investigation into the Department of Community Development and their termination. Therefore, the Defendant City is entitled to summary judgment on Count II of Plaintiffs' complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #46] is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot**.

Dated this 16th Day of June, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE